```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
LORIE A. BURGIN,

                        Plaintiff,           04-CV-6625

           v.                                **DECISION**
                                             **and ORDER**
MICHAEL J. ASTRUE[1],
Commissioner of Social Security

                        Defendant.
_____
```

### **INTRODUCTION**

Plaintiff Lorie A. Burgin ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act, seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[2] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") William B. Russell denying her application for benefits was against the weight of substantial evidence contained in the record and contrary to applicable legal standards.

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for his predecessor Commissioner JoAnne B. Barnhart as the proper defendant in this suit.

[2] This case was transferred to the undersigned by the Honorable David G. Larimer, United States District Court for the Western District of New York by Order dated December 3, 2007.

The Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c)("Rule 12(c)"), on grounds that the ALJ's decision was supported by substantial evidence. Plaintiff cross-moves for judgment on the pleadings, on grounds that the Commissioner's decision was erroneous. For the reasons set forth below, the Court finds that the decision of the Commissioner is supported by substantial evidence, and is in accordance with applicable law, and therefore the Commissioner's motion for judgment on the pleadings is hereby granted. Plaintiff's motion for judgment on the pleadings is denied.

## BACKGROUND

On June 16, 2003, Plaintiff, at that time a 39 year-old female with a GED and past work experience as a certified nurse's aide, personal care attendant, and cashier/checker, filed an application for DIB and SSI. She claims to have become disabled on October 4, 2002 due to multiple impairments including degenerative disc disease and bipolar disorder. Plaintiff's application was denied by the Social Security Administration initially on September 2, 2003. Thereafter, Plaintiff appeared, with counsel, at an administrative hearing before the ALJ on May 7, 2004. In a decision dated July 26, 2004, the ALJ determined that the Plaintiff was not disabled. The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals Council denied Plaintiff's request for

review on October 29, 2004. On December 23, 2004, Plaintiff filed this action.

## DISCUSSION

### I. Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Additionally, the section directs that when considering such a claim, the Court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See, Monqeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and moves for

judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

II.  **The Commissioner's decision to deny the Plaintiff benefits was supported by substantial evidence in the record.**

The ALJ in his decision found that Plaintiff was not disabled within the meaning of the Social Security Act. In doing so, the ALJ adhered to the Social Security Administration's 5-Step sequential evaluation analysis for evaluating appointments for disability benefits. See 20 C.F.R. §§ 404.1520 and 416.920.[3] Under Step 1 of the process the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. (Transcript of Administrative Proceedings at pages 15, 22)

---

[3] Five-step analysis includes the following: (1) ALJ considers whether claimant is currently engaged in substantial gainful activity; (2) if not, ALJ considers whether claimant has severe impairment which significantly limits his physical or mental ability to do basic work activities; (3) if claimant suffers such impairment, third inquiry is whether, based solely on medical evidence, claimant has impairment which is listed in regulations Appendix 1, and if so, claimant will be considered disabled without considering vocational factors; (4) if claimant does not have listed impairment, fourth inquiry is whether, despite claimant's severe impairment, he has residual functional capacity to perform his past work; and (5) if claimant is unable to perform past work, ALJ determines whether claimant could perform other work. See id.

(hereinafter "T."). At Steps 2 and 3, the ALJ concluded that Plaintiff's impairments of degenerative disc disease, obesity, and bipolar disorder were severe within the meaning of the Regulations but were not severe enough to meet or equal, either singly or in combination, any of the impairments listed in Appendix 1, Subpart P of Regulations No. 4. (T. at 18, 23).

At Step 4, the ALJ concluded that Plaintiff was unable to perform any of her past relevant work, which is classified as medium and heavy exertional levels, because she retained the residual functioning capacity to perform a narrowed range of sedentary work. (T. at 21, 23). Plaintiff can "perform work at the sedentary exertional level limited by the need for a sit/stand option and a low stress work environment, with no rapid production requirements or quotas, and up to one day's absence per month due to impairment." (T. at 20, 23). At Step 5, the ALJ concluded, based upon vocational expert testimony, that Plaintiff is capable of working as a cashier. (T. at 22, 23, 47-50). There are approximately 5,000 cashier jobs in New York State and 65,000 nationally. (T. 48).

### A. **The ALJ properly determined that Plaintiff's major depression was not a severe impairment.**

The ALJ determined that the medical record did not establish Plaintiff's major depression as a "mental impairment which satisfies diagnostic listing criteria for affective disorder (12.04)." (T. 18, 20). Plaintiff argues that there is substantial

evidence in the record that Plaintiff's depression is a severe impairment. (Pl. Br. at 12). I find that the ALJ's determination was supported by substantial evidence in the medical record.

The medical record reveals that Plaintiff was a "cooperative individual who displayed an ability to form adequate social relationships," and that her "attention and concentration skills considered functionally intact with recent and remote memory skills considered only mildly impaired." (T. at 17, 174, 175). Also, Plaintiff's mental "condition is improving with treatment and that her prognosis is good." (T. at 17, 20, 228).

Although no treating or examining physicians indicated that Plaintiff's major depression was severe enough to prevent her from performing sedentary work, the ALJ properly considered the evidence as a whole because, the ALJ "is entitled to rely not only on what the record says but what the record does not say." Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983). (T. 20, 176, 209).

The medical record reveals that Plaintiff's treating doctor did not document any (1) repeated episode of decompensation, each of extended duration; or (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) a current history of one or more years' inability to function outside a highly

supportive living arrangement with an indication of continued need for such an arrangement. (T. at 18).

### B. **The ALJ properly stated and correctly applied the treating physician rule.**

The ALJ restated the treating physician rule, 20 C.F.R. § 404.1527(d), which provides that a

> "treating source's opinion on the issues of the nature and severity of an impairment will be given more weight than opinions from other sources and will be given controlling weight if the opinion is both well-supported by medically acceptable clinical and laboratory techniques and not inconsistent with the other substantial evidence."

(T. at 19). The ALJ then listed the factors that are applied when evaluating a medical opinion. (T. at 19). Plaintiff argues that the ALJ erred when he evaluated the treating physicians' opinions, Dr. Alexander, Dr. Whitbeck, and Dr. Holder, that he did not explain why he did not afford their opinions controlling weight. Plaintiff also argues that the ALJ "gave greater weight to a non-examining state agency medical expert, (Pl. Br. at 14, 15, Tr. at 20).

Dr. Alexander's opinion (a chiropractor) is not "an acceptable medical source" and is not "a medical opinion entitled to controlling weight even when it concerns impairment within the realm of chiropractor's expertise." Diaz v. Shalala, 59 F.3d 307, 313 (2d Cir. 1995) (T. at 144). Dr. Whitbeck's opinion (an orthopedist) is an acceptable medical source, however, he is a non-treating source who provided a consultation. 20 C.F.R. § 404.1502. (T. at 16, 139).

Although the ALJ did not discuss Dr. Holder's opinion (a pain management specialist), his opinion that Plaintiff can lift "15 pounds occasionally, sit less than 6 hours in an 8 hour day, stand and walk less than 2 hours per day, and was limited in pushing and pulling" is consistent with the ALJ's finding that the Plaintiff can perform a narrowed range of sedentary work. (Tr. at 23, 155-156). Sedentary work involves "lifting no more than 10 pounds at a time" and "a certain amount of walking and standing ... necessary in carrying out job duties." 20 C. F. R. § 404.1567(a). In addition, Dr. Holder's opinion is not inconsistent with the non-examining state agency medical expert. The expert found that the Plaintiff is able to "lift 10 pounds frequently, 20 pounds occasionally, could walk about 6 hours out of an 8-hour workday, and sit for about 6 hours in an 8-hour workday." (Tr. at 20, 178).

### C. **The ALJ's Residual Functional Capacity assessment conformed to SSR 96-8P.**

The Plaintiff argues that the ALJ did not "overtly" go through the function by function and the seven strength demands of work analysis under SSR 96-8P before "classifying her capacity to work according to exertional categories." (Pl. Br. at 15-17). The ALJ performed the analysis when he discussed the medical record and all of the Plaintiff's symptoms that "can be reasonably accepted as consistent" with the medical evidence. (Tr. at 18-20). The ALJ then determined that the Plaintiff can perform sedentary work with certain limitations. (Tr. at 20).

**D. <u>The ALJ's evaluation did conform to the SSR 00-4P because there is no inconsistency between the Vocational Expert's testimony and the Dictionary of Occupational Titles.</u>**

The Plaintiff argues that the ALJ had a duty under SSR 00-4P to clarify any inconsistencies during the hearing between the Vocational Expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT"). (Pl. Br. at 17). Plaintiff states that there is an inconsistency because the VE failed to refer to which 20 cashier occupations, some of which are categorized as light work and some sedentary work, that the Plaintiff was capable of performing. (Pl. Br. at 18). There is no inconsistency here because the cashier occupation also includes sedentary work, and that of the 5,000 cashier jobs in New York, there would be a significant number of cashier jobs categorized as sedentary work. (Tr. at 48). In addition, during the hearing, the ALJ proposed several hypotheticals that asked the VE to name an occupation that was sedentary with a sit/stand option and that accounted for the Plaintiff's mental limitation. (Tr. at 47, 51). It is a logical assumption that the VE was referring to the cashier occupations that were sedentary work and not light work because he was not asked about occupations that are classified as light work.

**E. <u>The ALJ correctly determined that Plaintiff's subjective complaints were not credible.</u>**

The ALJ found that the Plaintiff's subjective complaints were not credible based on the objective medical records. (Tr. at 20).

The ALJ did not doubt that the Plaintiff was in significant pain at the time of the injury, but he noted that the medical records showed that the Plaintiff's condition improved. Id. He also noted that the Plaintiff "misrepresented her levels of pain and gave very inconsistent efforts during her last functional capacities evaluation." (Tr. at 20, 217-218). Although, the evaluation only showed inconsistent effort to squatting, the exercise physiologist noted that the Plaintiff "demonstrated cogwheeling, an inconsistent movement pattern used to portray weakness and/or greater difficulty." (Tr. at 217). The Plaintiff also gave inconsistent accounts of her pain when she told her physical therapist in May 2003 that she felt better and "happy with her therapy exercises", in contrast to her statement to Dr. Shayevitz, in August 2003, that physical therapy provided no relief.

    **F. The ALJ did not err when he did not order a consultative intelligence evaluation.**

The Plaintiff argues that the "ALJ did not meet his duty to fully develop the record" by not ordering a consultative intelligence evaluation. (Pl. Br. 20). However, during the hearing, the plaintiff's counsel requested more time to supplement the record to get a mental health professional to "pin down" Plaintiff's mental limitations. (Tr. at 29, 30). Plaintiff's counsel requested 30 days. (Tr. 30). The ALJ granted it and even offered to extend the 30 days if the Plaintiff needed more time. (Tr. 30, 51-52).  The plaintiff was given the full opportunity to

supplement her medical record with respect to her mental problems. In making his determination, the ALJ considered the total available record and properly concluded, based upon the substantial evidence in the record, that she was not disabled within the meaning of the Act.

## **CONCLUSION**

For the reasons set forth above, I grant Commissioner's motion for judgment on the pleadings. Plaintiff's motion for judgment on the pleadings is denied, and Plaintiff's complaint is dismissed with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

                                    s/Michael A. Telesca
                                        MICHAEL A. TELESCA
                                    United States District Judge

Dated:    Rochester, New York
          January 11, 2007